**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| R. David Wolfe, on behalf of himself and all others similarly situated, | Case No.  _____ |
| Plaintiff, | **VERIFIED CLASS ACTION COMPLAINT** |
| v. | |
| MORRY WEISS, ZEV WEISS, JEFFREY WEISS, ELIE WEISS, GARY WEISS, JUDITH WEISS,  IRVING I. STONE OVERSIGHT TRUST, IRVING STONE LIMITED LIABILITY COMPANY, IRVING I. STONE SUPPORT FOUNDATION, IRVING I. STONE FOUNDATION, and AMERICAN GREETINGS CORPORATION, | JURY TRIAL DEMANDED |
| Defendants. | |

Plaintiff R. David Wolfe ("Plaintiff"), by and through his undersigned counsel, upon knowledge as to himself and upon information and belief as to all other matters, alleges as follows:

## NATURE OF THE CASE

1.      This is a shareholder class action brought on behalf of the minority Class A shareholders of American Greetings Corporation ("AM" or the "Company"), seeking injunctive, declaratory, and other equitable relief in connection with a proposal by the Company's controlling shareholders to take the Company private (the "Proposed Transaction" or the "Transaction").  The Company is controlled by members of the Weiss family and affiliated entities (the "Weiss Family Defendants", defined below), descendents of Company founder Jacob Sapirstein, who hold approximately 51% of the voting power of the Company's

outstanding capital stock, largely through super-voting Class B common stock that they almost exclusively own. As controlling stockholders, the Weiss Family Defendants have a duty to ensure that any going-private transaction, such as the Proposed Transaction, is both financially and procedurally fair to the Company's minority shareholders, a duty they cannot fulfill under the terms of the Proposed Transaction.

2.     The Weiss Family Defendants have breached their duty of loyalty to the Company's minority shareholders by proposing and pursuing the Proposed Transaction whereby they will acquire the remaining Company shares that they do not already own from the Company's minority shareholders for $17.18 per share in cash. While minority shareholders will be cashed out at a price that does not reflect the full intrinsic value of the Company, the Weiss Family Defendants will rollover or reinvest substantially all of their equity stake in the Company post-transaction, reaping the benefit of the Company's prospects for long-term growth.

3.     In addition to the inadequate and unfair price being offered to the minority stockholders in the Proposed Transaction, the process that will inevitably be employed to evaluate the proposal is hopelessly infirm. Most notably, the Proposed Transaction will be evaluated by the Company's so-called "independent" directors. Yet, these directors are hardly independent and most, if not all, of them have significant connections with one or more of the Weiss Family Defendants. Four directors, including at least three that are connected with one or more of the Weiss Family Defendants, have recently been enlisted to serve on a special committee to "consider" the proposal (the "Special Committee" or the "Committee").

4.     Since at least three of the four members of the Special Committee have connections with one or more of the Weiss Family Defendants, genuine arm's-length negotiations by the Special Committee with the Weiss-Family Defendants is unachievable.

Indeed, as currently constituted, the Special Committee will be incapable under the terms of the Company's Amended and Restated Articles of Incorporation adopted on June 27, 2008 (the "Articles"), of approving a going-private transaction with the Weiss Family Defendants.[1] Moreover, the two other purportedly independent directors who are not members of the Special Committee are similarly incapable of approving the Proposed Transaction in accordance with the Articles' terms.

5.      Because the Weiss Family Defendants are intent on completing the Proposed Transaction on terms that are not entirely fair to the minority stockholders, and because the Special Committee and the Board will be incapable of approving such a transaction, Plaintiff and the Class, as defined below, are entitled to injunctive, declaratory and other equitable relief.

## <u>PARTIES</u>

6.      Plaintiff is the owner of AM Class A common stock and has been the owner of such stock continuously since prior to the wrongs complained of herein.

7.      Defendant AM is a corporation duly existing and organized under the laws of Ohio, with its principal executive offices located at One American Road, Cleveland, Ohio 44144. Founded in 1906 by Jacob Sapirstein, the Company designs, manufactures and sells everyday and seasonal greeting cards and other gift, stationary and party-supply products.  The Company's major greeting card lines are American Greetings, Carlton Cards, Gibson, Recycled Paper Greetings and Papyrus.  The Company also has one of the largest collections of greetings on the Web, including greeting cards available at Cardstore.com and electronic greeting cards available at AmericanGreetings.com.  In addition to these product lines, the Company also creates and licenses popular character brands through the American Greetings Properties group.   The Company operates in four business segments: North American Social Expression Products,

---

[1] A true and accurate copy of the Articles are attached hereto as Exhibit A.

International Social Expression Products, AG Interactive and non-reportable operating segments, and generates annual revenue of approximately $1.7 billion.   The Company's authorized capital stock consists of Class A common shares and Class B common shares.  While the economic rights of Class A and Class B shares are identical, the voting rights differ: Class A shares are entitled to one vote per share and Class B shares are entitled to ten votes per share.  There is no public trading market for the Class B common shares, which are held almost exclusively by the Weiss Family Defendants.  The Company's Class A shares trade on the New York Stock Exchange under the ticker "AM."  The Company has nine directors, three of whom are members of the Weiss family, as set forth below.

8.      Defendant Morry Weiss is the Company's Chairman of the Board, a position he has held since February 1992.  He has been a director since 1971 and currently serves as the Board's Executive Committee Chair.   Mr. Weiss joined the Company in 1961, and has previously served as the Company's President, Chief Operating Officer ("COO") and Chief Executive Officer ("CEO").  Mr. Weiss is the father of defendants Jeffrey M. Weiss, Zev Weiss, Gary Weiss, and Elie Weiss.  According to the Company's public filings Morry Weiss has sole power to vote or dispose of 331,334 Class B Shares and Mr. Weiss is expected to reinvest or rollover all or substantially all of his Class B Shares in the Company following the Proposed Transaction.

9.      Defendant Zev Weiss is the Company's CEO, a position he has held since 2003. He has been a director of the Company since 2003 and is currently a member of the Board's Executive Committee.  Mr. Weiss is the brother of defendants Jeffrey M. Weiss, Gary Weiss and Elie Weiss, and the son of defendant Morry Weiss.  According to the Company's public filings Zev Weiss has sole power to vote or dispose of 524,391 Class B Shares and Mr. Weiss is

-4-

expected to reinvest or rollover all or substantially all of his Class B Shares in the Company following the Proposed Transaction.

10.     Defendant Jeffrey Weiss is the Company's President and COO, positions he has held since 2003.  He has been a director of the Company since 2003 and is currently a member of the Board's Executive Committee.  Mr. Weiss is the brother of defendants Zev Weiss, Gary Weiss, and Elie Weiss, and the son of defendant Morry Weiss.  According to the Company's public filings, Jeffrey Weiss has sole power to vote or dispose of 337,620 Class B Shares and Mr. Weiss is expected to reinvest or rollover all or substantially all of his Class B Shares in the Company following the Proposed Transaction.

11.     Defendant Elie Weiss is the brother of defendants Zev Weiss, Jeffrey Weiss, and Gary Weiss and the son of defendant Morry Weiss.  Mr. Weiss is engaged in real estate development and is a principal in two restaurant development and operating groups, Paladar Latin Kitchen and Rum Bar, and Province, which have restaurants in Ohio, Maryland, Illinois and Arizona.  According to the Company's public filings, Elie Weiss has sole power to vote and dispose of 23,430 Class B Shares and Mr. Weiss is expected to reinvest or rollover all or substantially all of his Class B Shares in the Company following the Proposed Transaction.

12.     Defendant Gary Weiss is a Vice President of the Company.  Mr. Weiss is the brother of defendants Zev Weiss, Jeffrey Weiss, and Elie Weiss, and the son of defendant Morry Weiss.  According to the Company's public filings, Gary Weiss has sole power to vote and dispose of 11,430 Class B Shares and Mr. Weiss is expected to reinvest or rollover all or substantially all of his Class B Shares in the Company following the Proposed Transaction.

13.     Defendant Irving Stone Limited Liability Company ("Stone LLC") is an Ohio limited liability company formed primarily as a vehicle to facilitate the business and estate

planning goals of the late Irving I. Stone ("Stone").  Mr. Stone held 98% of the membership interest in Stone LLC until his death in 2000.  In 2006, this 98% membership interest was sold to defendants Zev, Jeffrey, Gary and Elie Weiss, and as a result of that transaction each of defendants Zev, Jeffrey, Gary and Elie Weiss now hold membership interests representing 24.5% of the equity of Stone LLC.  The remaining two percent membership interest in Stone LLC is held in equal parts by Judith Stone Weiss, Mr. Stone's daughter, and the Irving I. Stone Oversight Trust ("Oversight Trust").  According to the Company's public filings, Stone LLC beneficially owns and has the sole power to vote and dispose of 1,818,182 Class B Shares and Stone LLC is expected to reinvest or rollover all or substantially all of its Class B Shares in the Company following the Proposed Transaction.

14.    Defendants Morry Weiss, Zev Weiss, Jeffrey Weiss, Gary Weiss, Elie Weiss and Stone LLC are referred to collectively herein as the "Rollover Defendants."  According to the Company's public filings, the Rollover Defendants may be deemed as a group to have acquired beneficial ownership of an aggregate of 3,046,387 Class B Shares, representing approximately 81.6% of the outstanding Class B Shares as of July 2, 2012.

15.    Defendant Judith Weiss is the wife of defendant Morry Weiss.  Ms. Weiss beneficially owns 78,800 Class B Shares.  Upon information and belief, Ms. Weiss is one of the "family-owned Series B shareholders" referenced in the September 25 Letter (defined below) submitting the terms of the Proposed Transaction to the Board, and she intends to participate in the acquisition of AM's minority Class A shares along with the Rollover Defendants.

16.    Defendant Oversight Trust is located in Cleveland, Ohio and was created to manage the business and affairs of Stone LLC upon Mr. Stone's death.  The Oversight Trust is governed by its four trustees, defendants Zev, Jeffrey, Gary and Elie Weiss.

17.     Defendant Irving I. Stone Support Foundation ("Support Foundation") is a foundation incorporated and organized in the state of Ohio and located in Beechwood, Ohio. The Support Foundation owns approximately 200,000 Class B Shares.  Defendants Morry, Zev, Jeffrey, Gary, and Elie Weiss are trustees of the Support Foundation.  Upon information and belief, the Support Foundation is one of the "family-owned Series B shareholders" referenced in the September 25 Letter and it intends to participate in the acquisition of AM's minority Class A shares along with the Rollover Defendants.

18.     Defendant Irving I. Stone Foundation ("Stone Foundation") is a foundation incorporated and organized in the state of Ohio and located in Cleveland, Ohio.  The Stone Foundation owns approximately 203,964 Class B Shares.  Defendants Morry, Zev, Jeffrey, Gary, and Elie Weiss are trustees of the Stone Foundation.  Upon information and belief, the Stone Foundation is one of the "family-owned Series B shareholders" referenced in the September 25 Letter and it intends to participate in the acquisition of AM's minority Class A shares along with the Rollover Defendants.

19.     The Rollover Defendants and defendants Judith Weiss, Oversight Trust, the Support Foundation, and the Stone Foundation are referred to collectively herein as the "Weiss Family Defendants."

20.     The Weiss Family Defendants and the Company are sometimes referred to collectively herein as the "Defendants."

21.     By reason of the their position as controlling shareholders of the Company, the Weiss Family Defendants have a fiduciary relationship with Plaintiff and the other public shareholders of AM and owe Plaintiff and the other members of the class heightened duties of

good faith, fair dealing, and loyalty, and to ensure that any self-interested transaction is entirely fair to the Company's minority shareholders.

## JURISDICTION

22.     This Court has subject matter jurisdiction over all claims asserted herein pursuant to 28 U.S.C. § 1332 in that complete diversity exists between Plaintiff and each of the Defendants and the amount in controversy exceeds $5,000,000 exclusive of interest and costs.

23.     The Court has personal jurisdiction over each of the Defendants because each has sufficient minimum contacts with Ohio to justify that State's exercise of personal jurisdiction over each of them consistent with the laws of Ohio and the United States Constitution.

24.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because all of the Defendants reside in this District, a substantial portion of the transactions and wrongs complained of herein occurred in and/or had a substantial effect in this District, and the Defendants have received substantial compensation and other transfers of money in this District by doing business here and engaging in activities having an effect here.

## SUBSTANTIVE ALLEGATIONS

25.     As of April 27, 2012, the Weiss Family Defendants beneficially owned approximately 94% in the aggregate of the Company's outstanding Class B common shares which, together with Class A common shares beneficially owned by them, represents approximately 51% of the voting power of the Company's outstanding capital stock.  As the Company notes in its most recent Annual Report, given their majority voting stake, the Weiss Family Defendants are "able to significantly influence the outcome of shareholder votes, including votes concerning the election of directors, the adoption or amendment of provisions in our Articles of Incorporation or Code of Regulations, and the approval of mergers and other significant corporate transactions…"  The Weiss Family Defendants' voting power "makes it

less likely that any other shareholder will be able to affect [the Company's] management or strategic direction" and would likely "delay or prevent a change in [the Company's] management or voting control or its acquisition by a third party."

26. The control wielded by the Weiss Family Defendants is preserved through the Company's Articles, which provide that a holder of Class B shares may not transfer such shares (except to permitted transferees, a group that generally includes members of the holder's extended family, family trusts and charities) unless the holder first offers the Class B shares to the Company. Although the Company has historically repurchased the Class B shares when they have been offered, in the event that the Company does not purchase the shares, Class B shareholders must convert the shares, on a one-to-one basis, into Class A common shares before transferring those shares to anyone other than a permitted transferee.

27. It is under the backdrop of this overt control that defendants Jeffrey and Zev Weiss, on behalf of the Weiss Family Defendants, wrote to the Board on September 25, 2012, setting forth the terms of the Proposed Transaction (the "September 25 Letter"). While the $17.18 price per share offered in the Proposed Transaction represents a 20% premium to the Company's closing price the day before the proposal was publicly announced, the offer is a paltry 5.4% premium to the Company's closing price less than two weeks prior. In the September 25 Letter, the Weiss Family Defendants described the offer price as "compelling" and noted that it "provides the public stockholders of the company with liquidity and certain value in a highly volatile period in the equity markets." While minority shareholders would be cashed out, the members of the Weiss family and related entities are expected to "reinvest or rollover all or substantially all of their shares" in the post-transaction private entity.

28.     The price offered to minority shareholders in the Proposed Transaction and the Company's justification was panned by investors and commentators because the offer price does not reflect the Company's full intrinsic value.  Taesik Yoon of *Forbes* observed the modest premium and stated that the offer price "seems low" and values the Company's stock at "just ten times its current year's earnings estimate of $1.69 per share, 0.35 times trailing 12-month sales, and less than the company's book value of about $19 per share."  Ben Franklin, a portfolio manager with Intrepid Capital Management ("Intrepid"), which holds about 6% of AM's Class A shares, stated that the offer price was too low for a "high cash-generating business" and that "[i]t's less than five times average free cash flow for the past three years."  Finally, Eric Cinnamond, portfolio manager for River Road Asset Management ("River Road") which holds approximately 6.5% of AG's Class A stock, noted that the Weiss family was "clearly being opportunistic" given the Company's current, historically low share price and the high market availability of low-interest credit, and that the Board could not justify a going-private transaction at the offer price.

29.     Despite their stated goal to provide the Company's shareholders with "liquidity and certain value in a highly volatile period in the equity markets," the Weiss Family Defendants' concern for minority shareholders extends only so far as it serves the family's interests.  Instead of engendering a process that would result in a truly compelling price reflecting the Company's intrinsic value, through a competitive bidding or auction process, the Weiss Family Defendants have made it clear that they will not consider strategic alternatives to the Proposed Transaction, stating in the September 25 Letter that they have "no current intention to sell all or any significant portion of their shares."  It is clear that the Weiss Family Defendants

see long-term growth in the Company, and the Proposed Transaction is the means for them to unfairly capitalize on that growth at the expense of the minority shareholders.

30.     In fact, the Company has acknowledged that it has recently pursued strategic actions—at the direction of the Weiss-led company management— that have brought volatility to its earnings in the near term, with the goal of long-term growth.  Specifically in its 2012 Annual Report, the Company notes that "[d]uring 2012, our total revenue, operating results and cash flows were impacted by the multiple strategic actions we executed during the year to support both our short-term and long-term business goals" and that such actions "have brought volatility to our earnings."  Nonetheless, the Company stated that these strategic actions will "help us grow our business over the long term."  Indeed, in an earnings teleconference held with investors and analysts on September 28, 2012, a Morgan Stanley analyst noted "that [the] management team is very bullish on the long-term prospects for the company."

31.     Through their opportunistic proposal, the Weiss Family Defendants will reap the benefits of this long-term growth strategy while the Company's minority shareholders will be cashed out at a price that doesn't reflect the Company's intrinsic value and instead reflects the impact of Management's strategic initiatives on the current stock price.

**The "Independent" Directors and Special Committee Members Have Substantial Connections with the Weiss Family**

32.     In response to receiving the September 25 Letter, the Company released a statement on September 26, 2012 stating that the Company "will form a special committee of independent directors to consider the proposal."  According to the Company's most recent Proxy Statement filed with the U.S. Securities and Exchange Commission on May 11, 2012, all six of the non-Weiss Board members are considered "independent."  Yet, at least five of the six non-Weiss Board members have connections with the Weiss Family Defendants.  This effectively

forecloses the possibility of a fair evaluation of the Proposed Transaction and genuine arm's length negotiations with the Weiss Family Defendants.

33.     In addition, the Company's Articles require that any special committee of the Board tasked with authorizing or approving a contract with self-interested directors, such as the transactions contemplated by the Proposed Transaction, must be composed of a majority of directors with no connection whatsoever with any of the self-interested directors pursuing the transaction.  Specifically, Article Seventh of the Articles provides, in part:

> No contract or other transaction entered into by the Corporation shall be affected by the fact that any Director of the Corporation is **in any way** interested in, **or connected with, any party** to such contract or transaction, or himself is a party to such contract or transaction, provided that such contract or transaction shall be approved by a majority of the Directors present at the meeting of the Board or of the Committee authorizing or confirming such contract or transaction, **which majority shall consist of Directors not so interested or connected**.  (emphasis added)

34.     Nonetheless, on October 19, 2012, the Company issued a press release on its website announcing the formation of the Special Committee to consider, among other things, the Proposed Transaction.  In its press release, the Company disclosed that the Committee would be comprised of directors Scott S. Cowen ("Cowen"), Jeffrey D. Dunn ("Dunn"), William E. MacDonald, III ("MacDonald") and Michael J. Merriman, Jr. ("Merriman").  The press release also indicated that the Special Committee is "authorized to review and evaluate other options available to the Company."

35.     Though putatively "independent" under stock exchange standards, an examination of the Special Committee members reveals that at least Cowen, McDonald, and Merriman have several connections with one or more of the Weiss Family Defendants.  In fact, the backgrounds of all of the Company's so-called independent directors reveal a web of professional and civic

-12-

connections between the Weiss Family Defendants, on the one hand, and the non-Weiss directors, on the other hand.

36.     Director Merriman has been a Board member since 2006.  Leading up to his appointment as a director, Merriman served as the Company's Senior Vice President ("Senior VP") and Chief Financial Officer ("CFO") from September 2005 until November 2006.  In his time as an executive at the Company, Merriman developed a close working relationship with defendants Zev, Jeffrey, and Morry Weiss and other senior executives at the Company.  In addition, while he served as the Company's Senior VP and CFO, Merriman received substantial remuneration from the Company, including, but not limited to, a starting salary of $400,000, which was subsequently increased, stock options, and participation in the Company's incentive plan, which had a target percentage of 80% of salary.

37.     In addition to these professional connections,  since he became a member of the Board, the Company has consistently contributed to charitable organizations affiliated with Merriman.  For instance, the Company disclosed that in fiscal 2012, under its charitable matching contribution program, the Company made matching contributions of $10,000 to charitable or non-profit organizations on behalf of Mr. Merriman.  In addition, in each of its last four annual proxy statements, the Company disclosed that it made discretionary charitable contributions to charitable organizations where Merriman serves or has served as an executive officer, director or trustee.  Along with defendant Zev Weiss, Merriman is currently a director of Enactus, formerly known as Students in Free Enterprise, a non-profit organization that the Company has given generously to in the past, when prior directors were associated with the entity.  Notably, the Company made donations to Enactus of $135,000, $95,000 and $180,000 in fiscal years 2003, 2004 and 2005, respectively.  Upon information and belief, as chief executive

officer and chairman of the Board, respectively, defendants Zev Weiss and Morry Weiss direct the Company's charitable contributions to organizations of their choice.

38.     Director Cowen, the chair of the Special Committee, has been a director of the Company since 1989 and is the longest-serving member of the Board.  He is currently the President of Tulane University, a position he has held since 1998.  Since he has been at Tulane, the Company has made significant donations to the University, including a $15,000 donation in each of fiscal year 2003 and fiscal year 2004 as well as a $500,000 pledge during fiscal year 2006 that was to be paid over a five-year period.  Prior to his affiliation with Tulane, Cowen was a professor of management and dean at Case Western Reserve University, Morris Weiss's alma mater.  Cowen is a director of Forest City Enterprises ("Forest City"), an entity affiliated with Company director Charles A. Ratner ("Ratner"), which has a subsidiary that rents retail store space to the Company.  In addition, Cowen was previously a director of Jo-Ann Stores, Inc. (a publicly-held specialty store retailer) from 1987 until its sale in 2011.  As documented in the Company's public filings, for at least part of this time, including from 2008 through 2011, Jo-Ann Stores purchased the Company's products.

39.     In addition to these professional connections, in each of its last six annual proxy statements, the Company disclosed that it made discretionary charitable contributions to charitable organizations where Cowen serves or has served as an executive officer, director or trustee.  The Company disclosed that in fiscal 2012, under its charitable matching contribution program, the Company made matching contributions of $10,000 to charitable or non-profit organizations on behalf of Cowen.  Cowen is a former trustee of the the Jewish Federation of Cleveland (the "Jewish Federation"),[2] where Defendant Zev Weiss is a trustee and defendant

---

[2] The Jewish Federation of Cleveland was formerly known as the Jewish Community Federation of Cleveland.

Morry Weiss is a Trustee-for-Life and to which the Company made a donation of $100,000 in 2006.  In addition to the Company's charitable contributions to that organization, the respective tax filings for defendants Stone Foundation and Support Foundation reveal that both organizations have supported the Jewish Federation.  In particular, the Support Foundation listed the Jewish Federation as a supported organization in its 2009-2011 IRS Form 990 filings and the Stone Foundation reported charitable contributions to the organization of $200,000 (2008), $473,250 (2009) and $1,108,600 (2010).

40.      Cowen is also a former member of the United Way of Greater Cleveland's ("United Way")[3] Strategic Planning Committee.  Defendant Zev Weiss is currently on the United Way's executive committee and defendant Morry Weiss is currently a board member of that organization.  The Company made charitable contributions to the United Way of $190,000 in each of fiscal years 2003 and 2004, $225,000 in fiscal year 2005, and $270,000 in fiscal year 2006.

41.      Director MacDonald has been a director of the Company since 2007.  MacDonald was Vice Chairman and member of the Office of the Chairman of National City Corporation ("National City"), a financial holding company, from 2001 until his retirement on December 31, 2006.  Prior to that, MacDonald held various management positions within National City over more than 30 years.  Defendant Morry Weiss served as a director of National City Corporation from 1991 until its sale in 2008.  Moreover, National City Bank and its affiliates have provided various services to the Company, including: (1) as lender, joint lead arranger, joint bookrunner and the global agent under the Company's revolving credit facility; (2) as an underwriter in the Company's May 2006 offering of $7^{3/8}$% senior notes due 2016; and (3) as the Company's transfer agent.

---

[3] United Way of Greater Cleveland was formerly known as United Way Services of Greater Cleveland.

42.     In addition to these professional connections, MacDonald has numerous civic affiliations in common with the Weiss family, including (1) his position as a Trustee Emeritus for ideastream, a Cleveland non-profit organization affiliated with WVIZ/PBS, where defendant Jeffrey Weiss is a member of the organization's Chair's Council; (2) his membership on the board of  the Cleveland Clinic Foundation, where defendant Morry Weiss is a member of the Board of Trustees; and (3) his membership on the board of the United Way, an entity AM has contributed to in the past and where Zev Weiss is a member of the Executive Committee and, according to the Company's website, Morry Weiss is a director.  The Company has made numerous charitable contributions to the Cleveland Clinic Foundation over the years, including a $200,000 pledge in fiscal year 1998 and a $1,000,000 pledge in fiscal year 2004, each to be paid over a ten-year period.  Moreover, in each of its last six annual proxy statements, the Company disclosed that it made discretionary charitable contributions to charitable organizations where MacDonald serves or has served as an executive officer, director or trustee.

43.     Director Dunn is the Former President and Chief Executive Officer of HIT Entertainment Limited ("HIT") where he served from 2008 until the company was sold in 2012. Prior to the sale, Dunn held a 5% equity stake in HIT.  As acknowledged in AM's public filings, from 2008 through 2012, during the time that he was both CEO and a 5% equity stakeholder in HIT and a director of AM, the Company licensed certain character properties from HIT in the ordinary course of its business.

**The Other "Independent" Directors Have Substantial Connections with the Weiss Family**

44.     The Special Committee's mandate is reportedly to "consider" the Proposed Transaction.  There is nothing in the Company's October 19 press release or in any of its other public disclosures concerning the Transaction stating that the Committee is empowered to authorize or approve the Weiss Family Defendants' proposal.  Accordingly, the other non-Weiss

Board members who are not on the Special Committee will have to approve or authorize the Proposed Transaction. Yet, those directors are also connected with one or more of the Weiss Family Defendants.

45.     Director Ratner is Chairman of the Board of Forest City, a company his ancestors founded. Ratner is a former president and CEO of Forest City and maintains a greater than 10% stake in the Company. As disclosed in the Company's public filings, a subsidiary of Forest City rents retail store space in various shopping malls to the Company pursuant to lease agreements entered into in the ordinary course of business. Total payments made by the Company to Forest City (or its subsidiaries) totaled $1,578,507, $1,530,078 and $1,184,423 for the fiscal year ended February 29, 2004, the fiscal year ended February 28, 2005, and the fiscal year ended February 28, 2006, respectively, and these payments included payments for rent, water, common area expenses, dues, electricity, heating, ventilation and air conditioning, media, storage, real estate tax and waste removal.

46.     Moreover, Mr. Ratner has a 10% indirect ownership interest, through a trust, in a Cleveland, Ohio shopping mall that leased space to the Company for one retail store. During fiscal 2010, 2011 and a portion of fiscal 2012, that shopping mall was managed by RMS Investment Corporation ("RMS"). Each of Mr. Ratner's four children has a 4.28% ownership interest in RMS. In addition, Ratner is a former director of the Cole National Corporation, which has provided vision care health benefits to American Greetings employees.

47.     In addition to these professional connections, in each of its last six annual proxy statements, the Company disclosed that it made discretionary charitable contributions to charitable organizations where Ratner serves or has served as an executive officer, director or trustee. The Company has also previously disclosed contributions to numerous charities

-17-

connected to both Ratner and the Weiss Family Defendants.  For instance, the Company made charitable contributions to the Cleveland Orchestra of $10,000, $20,000 and $20,000 in fiscal years 2003, 2004 and 2005, respectively.  Mr. Ratner is a member of the board of trustees of the Musical Arts Association, the parent organization of the Cleveland Orchestra and defendant Morry Weiss is, likewise, "involved with" the Cleveland Orchestra according to Company filings.  The Company also made contributions of $37,500 in each of fiscal years 2003 and 2004, $49,500 in fiscal year 2005, and $102,000 in fiscal year 2006 to the Greater Cleveland Partnership, when Ratner and fellow director Jerry Sue Thornton ("Thornton") served on its board of trustees.  Ratner is still a board member of that organization alongside defendant Zev Weiss.

48.     The Company has also made charitable contributions to the Jewish Federation when Ratner was a member of the board of trustees of that organization (see paragraph 39 *supra*).  He is currently a Trustee-for-Life and a member of the executive committee of the Jewish Federation.  Defendant Zev Weiss is a trustee of the Jewish Federation and defendant Morry Weiss is a Trustee-for-Life of the organization.  In addition, in 1998, defendant Morry Weiss and Ratner co-chaired a 40-person delegation of Northeast Ohioans who participated in a trip to Israel sponsored by the Jewish Federation.  The Company also made donations to the United Way when Ratner was a member of the board of trustees (see paragraph 40 *supra*).  He is currently on the organization's executive committee alongside defendant Zev Weiss.  In addition to the aforementioned connections, upon information and belief, Ratner and the Weiss Family Defendants also share a personal bond.  On at least one occasion, defendant Morry Weiss has publicly reflected upon his close and long-term personal relationship with Ratner's father, Max Ratner.

49.     Director Thornton has been a director of the Company since 2000.  She is president of Cuyahoga Community College (the "College").  During its fiscal year 2000, around the time Thornton joined the Board, the Company made a $1 million pledge to the Tri-C Foundation, an entity that engages in fundraising for the College.  The pledge was to be paid over a seven-year period.  In addition, in or around 2001, the Company partnered with the College to create the school's Visual Communications Center.  The Company also made a $25,000 contribution to the Tri-C "JazzFest" in 2006.  In addition to her work as a college president, Thornton serves on the board of directors of Applied Industrial Technologies, Inc., an entity from which the Company purchased products and services, as disclosed in AM's last six annual proxy statements.  Thornton also served as a board member of National City from 2004 until that Company's sale in 2008, alongside defendant Morry Weiss and director MacDonald.  As alleged in paragraph 41 *supra*, National City provided substantial services to the Company.

50.     Thornton serves as a director of the United Way and as the Corporate Secretary of the Greater Cleveland Partnership, organizations that are affiliated with the Weiss family and that the Company has given generously to in the past (see paragraphs 40 and 47 *supra*).  In addition, the Company has disclosed in each of its last six annual proxy statements that it made discretionary charitable contributions to organizations where Thornton serves or has served as an executive officer, director or trustee.  The Company also disclosed that in fiscal 2012 it made matching contributions of $10,000 to charitable or non-profit organizations on behalf of Thornton under its charitable matching contribution program.  Thornton was also a part of the 40-person delegation chaired by defendant Morry Weiss and Ratner who participated in a trip to Israel sponsored by the Jewish Federation in 1998.

51.     Due to the myriad connections between the Weiss family and most, if not all, of the non-Weiss members of the Board, including three of the four Special Committee members, the Board's purportedly independent directors are unable to properly approve, authorize or confirm the Proposed Transaction as is required under the Company's Articles.   Article Seventh of the Articles is designed, at least in part, to ensure that self-interested transactions by the Weiss Family Defendants are approved by persons with no connection in any way to the Weiss Family Defendants.  The Special Committee's composition, however, with several connections between its members and the Weiss family, makes compliance with the Articles' dictates impossible. Directors Ratner and Thornton are similarly incapable of providing the requisite approval.

52.     Moreover, even if the Special Committee was capable of properly approving the Proposed Transaction pursuant to the Articles, the Committee's authority to "review and evaluate other options available to the Company" as stated in the Company's October 19 press release, is essentially meaningless.  The Weiss Family Defendants have made it clear that they will not consider strategic alternatives to the Proposed Transaction and have "no current intention to sell all or any significant portion of their shares."  Thus, armed with a majority stake in the Company, the Weiss Family Defendants have the ability to reject any alternative to the Proposed Transaction if it does not suit the family's interests.

53.     Through the deeply conflicted Special Committee and its limited, ineffective mandate, the Weiss Family Defendants have failed to ensure that the Proposed Transaction will be negotiated at arm's length through a fair process designed to protect the minority stockholders' interests from the controlling shareholders' self interest.  As a result, and in the absence of Court intervention, the Company's minority shareholders will suffer substantial and irreparable harm.

## CLASS ACTION ALLEGATIONS

54.     Plaintiff brings this action individually and as a class action, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of all current Class A common stockholders of the Company (the "Class").  Excluded from the Class are the defendants and any person, firm, trust, corporation or other entity related to or affiliated with any of the defendants, including any executive officers of the Company.

55.     This action is properly maintainable as a class action.

56.     The Class is so numerous that joinder of all members is impracticable.  As of October 1, 2012, there were outstanding 28,755,110 Class A common shares.

57.     There are questions of law and fact that are common to the Class, including, *inter alia*, the following:

(a)     whether Plaintiff and the other members of the Class would be irreparably damaged if the Proposed Transaction is consummated;

(b)     whether the Company is unable to properly constitute a special committee of independent directors to consider the Proposed Transaction;

(c)     whether the Special Committee, as currently constituted, is unable to approve, authorize or confirm the Proposed Transaction in accordance with the Articles;

(d)     whether the Weiss Family Defendants as controlling shareholders of the Company have personally breached their fiduciary duties to Plaintiff and the other members of the Class;

(e)     whether the Class is entitled to injunctive or other equitable relief as a result of the Defendants' wrongful conduct.

58.     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.  Plaintiff's claims are typical of the claims of the

other members of the Class and Plaintiff has the same interests as the other members of the Class. Accordingly, Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

59.     A class action is superior to other available methods for the fair and efficient adjudication of this shareholder action. Indeed, the prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants. In addition, Defendants have acted, or refused to act, on grounds generally applicable to, and causing injury to, the Class and, therefore, preliminary and final injunctive relief and other equitable relief on behalf of the Class as a whole is appropriate.

## COUNT I

### Breach of Fiduciary Duties Against the Weiss Family Defendants

60.     Plaintiff repeats and re-alleges all previous allegations as if set forth at full herein.

61.     As the controlling shareholders of AM, the Weiss Family Defendants owe Plaintiff and the other members of the Class heightened duties of good faith, fair dealing, and loyalty, obligations which demand that their decisions be made for the welfare, advantage, and best interests of the Company and the shareholders as a whole, not just for their own self-interest. Stated differently, the Weiss Family Defendants must ensure that any self-interested transaction is entirely fair to the minority Class A shareholders.

62.     In breach of these obligations, the Weiss Family Defendants have proposed a self-interested transaction to the Company's Board through which the Weiss Family Defendants will acquire the minority shareholders' interests at a price that does not reflect the intrinsic value of the Company and the Class A minority shareholders' stock.

63.     In further breach of their obligations, the Weiss Family Defendants have failed to ensure that a fair process is in place to ensure genuinely arms-length negotiations on behalf of the minority shareholders, or otherwise protect the interests of the Company's minority shareholders.

64.     As a result of the Weiss Family Defendants breach of their fiduciary duties, Plaintiff and the Class have suffered and will suffer substantial harm.

65.     Absent the injunctive, declaratory and other equitable relief sought here, the Weiss Family Defendants' actions will continue to harm Plaintiff and the Class.

## COUNT II

### Against the Company for Declaratory Relief Concerning the Special Committee and the Purportedly "Independent" Members of the Board

66.     Plaintiff repeats and re-alleges all previous allegations as if set forth at full herein.

67.     The Weiss Family Defendants have proposed a self-interested transaction to the Company's Board through which the Weiss Family Defendants will acquire the minority shareholders' interests in the Company.

68.     According to the Company's press release on October 19, 2012, the Company formed a Special Committee consisting of four putatively "independent" directors to "consider" the Weiss Family Defendants' proposal.

69.     At least three of the four members of the Special Committee have connections with one or more of the Weiss Family Defendants that renders the Special Committee incapable of authorizing, confirming, or approving a transaction such as the Proposed Transaction.  The other purportedly independent directors likewise have connections with one or more of the Weiss Family Defendants.

70. The Company's Articles constitute a contract between the Company and its shareholders.

71. Plaintiff and the Class have standing to enforce the provisions of the Articles.

72. The provisions of Article Seventh of the Articles require that a majority of the Board members that will purport to approve, authorize or confirm a going-private transaction with the Weiss Family Defendants have no connection "in any way" to "any" of the Weiss Family Defendants.

73. As set forth above, at least three of the four members of the Special Committee have connections to one or more of the Weiss Family Defendants as do the two other non-Weiss members of the Board.

74. Pursuant to the provisions of Article Seventh of the Articles, the Special Committee, or any other group of Company directors asked to authorize the Proposed Transaction, cannot consist of a majority of "Directors …[in any way] connected" with "any" of the Weiss Family Defendants.

75. Therefore, the Special Committee, or any other group of Company directors, is incapable under the Articles of approving, by majority vote, any going-private transaction such as that contemplated in the Proposed Transaction.

76. Plaintiff seeks a declaration from the Court that the Special Committee and the Board is incapable of approving, authorizing or confirming, in accordance with the Articles, a transaction with the Weiss Family Defendants such as the going-private transaction contemplated by the Proposed Transaction.

77. Plaintiff further seeks a declaration from the Court that the Company's Board, as currently constituted, is incapable of forming a committee comprising a majority of disinterested

and non-connected directors under Article Seventh of the Articles to authorize or confirm a transaction with the Weiss Family Defendants such as the going-private transaction contemplated by the Proposed Transaction.

78.     Injunctive, declaratory and other equitable relief is appropriate to compel the Company's adherence to the Articles' contractual dictates.

79.     Absent equitable relief, Plaintiff and the Class will suffer irreparable harm.

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive, declaratory and other equitable relief, in its favor and in favor of the Class and against Defendants, as follows:

1.     Declaring that this action is properly maintainable as a class action;

2.     Declaring that the Proposed Transaction represents a breach of the Weiss Family Defendants' fiduciary duties, including duties of loyalty and entire fairness, as the Company's controlling shareholder;

3.     Declaring the meaning, interpretation and applicability of the Articles with respect to the Special Committee and any committee or group of Company directors formed for the purposes of approving any transaction with the Weiss Family Defendants such as the going-private transaction contemplated by the Proposed Transaction;

4.     Declaring that the Special Committee and the Board are incapable under the Articles of approving the Weiss Family Defendants' Proposed Transaction or any similar going-private transaction involving the Weiss Family Defendants;

5.     Enjoining Defendants from proceeding with the Proposed Transaction or any other acquisition negotiated between the Board and the Weiss Family Defendants without ensuring compliance with the Articles;

6.      Enjoining Defendants from consummating the Proposed Transaction or any other acquisition by the Weiss Family Defendants or their related or affiliated entities unless and until the Company adopts and implements a procedure or process whereby a truly independent special committee is established in accordance with the Articles to conduct genuine arm's-length negotiations with the Weiss Family Defendants and act independently of the full Board in that regard;

7.      Declaring invalid and unenforceable any disclosed or undisclosed agreements between the Company and the Weiss Family Defendants with respect to the Proposed Transaction;

8.      Ordering rescission, rescissory damages, or other equitable relief should the currently constituted Special Committee, or any other committee of Company directors formed from the current Board, purport to approve a going-private transaction by the Weiss Family Defendants, or any member of the Weiss family, and such a transaction is consummated;

9.      Awarding Plaintiff attorneys' fees and costs and expenses in connection with this action; and

10.     Granting such other and further relief as this Court deems just and proper.


Dated:  November 6, 2012                          Respectfully submitted,


                                                   /s/ Joel Levin
                                                  Joel Levin              (0010671)
                                                  Aparesh Paul            (0077119)
                                                  LEVIN & ASSOCIATES CO., L.P.A
                                                  The Tower at Erieview, Suite 1100
                                                  1301 East 9th Street
                                                  Cleveland, Ohio 44114
                                                  (216) 928-0600
                                                  (216) 928-0016

KESSLER TOPAZ
MELTZER & CHECK, LLP
Lee Rudy
Michael Wagner
J. Quinn Kerrigan
280 King of Prussia Road
Radnor, PA 19087
(610) 667-7706
(610) 667-7056

GLANCY BINKOW & GOLDBERG LLP
Michael M. Goldberg
Louis Boyarsky
1925 Century Park East
Suite 2100
Los Angeles, CA 90067
(310) 201-9150
(310) 201-9160

LAW OFFICES OF HOWARD G. SMITH
Howard G. Smith
3070 Bristol Pike, Suite 112
Bensalem, PA 19020
(215) 638-4847
(215) 638-4867

*(attorneys not admitted before the Northern
District of Ohio to file pro hac vice)*