UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| R. David Wolfe, on behalf of himself and all others similarly situated,<br><br>                Plaintiff,<br><br>     vs.<br><br>Morry Weiss, et al.,<br><br>                Defendants. | CASE NO. 1:12-CV-02776<br><br>JUDGE JAMES S. GWIN |
| Louisiana Municipal Police Employees' Retirement System, on behalf of itself and all others similarly situated,<br><br>                Plaintiff,<br><br>     vs.<br><br>Morry Weiss, et al.,<br><br>                Defendants. | CASE NO. 1:12-CV-02816<br><br>JUDGE JAMES S. GWIN |

**DEFENDANT AMERICAN GREETINGS CORPORATION'S
REPLY IN SUPPORT OF MOTION TO DISMISS**

**INTRODUCTION**

Defendant American Greetings Corporation ("American Greetings") moved to dismiss Plaintiffs' actions because the Court does not have—or at least should not exercise—jurisdiction over them, and they both plead derivative claims as direct causes of action.[1] Plaintiffs' attempt to explain away these fatal jurisdictional and pleading defects misses the mark in all respects.

First, by its plain terms, the Class Action Fairness Act ("CAFA") "shall not apply" to actions related to a corporation's internal affairs. Although Plaintiffs concede that their suits relate directly to American Greetings' internal affairs, they nevertheless insist CAFA gives the Court subject-matter jurisdiction over their actions. In taking this position, Plaintiffs invite the Court to break new ground by holding that CAFA does not mean what it says. This is an invitation the Court should decline.

Second, in opposing abstention, Plaintiffs attempt to distinguish their cases from the litigation already pending in the Cuyahoga County Court of Common Pleas, yet all of the actions seek to stop the proposed going-private transaction based upon a supposed conflict of interest. The *Colorado River* doctrine exists for precisely this scenario, and Plaintiffs' arguments against applying that doctrine here come up well short.

Finally, Plaintiffs try to convince the Court that their derivative declaratory judgment claims are actually direct claims by appealing to cases that deal with close corporations and post-transaction remedies. But those authorities are irrelevant, and since Plaintiffs' declaratory judgment claims arise solely by virtue of their shareholder status and are common to all

---

[1] American Greetings separately moved to dismiss the actions brought by Plaintiff R. David Wolfe and Plaintiff Louisiana Municipal Police Employees' Retirement System ("LAMPERS"). Because Plaintiffs have jointly opposed these motions, American Greetings offers this single brief in support of both motions.

American Greetings shareholders, they are derivative.  To properly state these claims, Plaintiffs must comply with Rule 23.1.  As American Greetings already has demonstrated, this is something Plaintiffs have not done and cannot do.

## LAW AND ARGUMENT

**I.       The Court Lacks Subject-Matter Jurisdiction Under CAFA.**

In their respective Complaints, Plaintiffs sought to invoke this Court's subject-matter jurisdiction under "28 U.S.C. § 1332."  (*See* Wolfe Compl. ¶ 22; LAMPERS Compl. ¶ 10.)  Neither Plaintiff identified whether jurisdiction supposedly arose under § 1332(a)—ordinary diversity jurisdiction—or § 1332(d)—CAFA jurisdiction.  Because both Complaints referenced only the $5,000,000 aggregate amount-in-controversy threshold set forth in CAFA, American Greetings concluded that Plaintiffs brought their suits under CAFA and moved to dismiss them based on the corporate-governance exception to CAFA jurisdiction.

Plaintiffs now suggest this Court has jurisdiction under both § 1332(a) ***and*** § 1332(d).  As set forth in the motion to dismiss filed by the Weiss Family Defendants, as well as their reply brief in support of that motion, this Court lacks diversity jurisdiction under § 1332(a) because Plaintiffs failed to properly plead the necessary $75,000 amount in controversy.[2]

Plaintiffs also fail to offer any cogent argument why CAFA's corporate-governance exception should not apply here.  Plaintiffs contend in their Opposition that "CAFA was intended to expand federal jurisdiction and allow class actions of nationwide impact . . . to be heard in federal court."  (Opp. at 12.)  American Greetings does not dispute this basic proposition, but only as far as it goes.  Plaintiffs seek to use the impetus for CAFA as a license to

---

[2] American Greetings joins in the Weiss Family Defendants' reply brief in all respects.

rewrite its terms in contending that the corporate-governance exception does not preclude federal courts from hearing cases that fall within its scope. This position is belied by CAFA's plain language.

Paragraph (2) of CAFA contains an *express* jurisdictional grant—it provides that district courts have original jurisdiction over class actions where the amount in controversy exceeds $5,000,000 and where minimal diversity exists between the parties. *See* 28 U.S.C. § 1332(d)(2). In Paragraph (9), the statute goes on to state that "Paragraph (2) **shall not apply** to any class action . . . that relates to the internal affairs or governance of a corporation." 28 U.S.C. § 1332(d)(9)(B) (emphasis added). Thus, contrary to Plaintiffs' assertion (*see* Opp. at 14-15), Paragraph (9)(B) is indeed an "explicit" and "mandatory" exception to the Act.[3] *See, e.g.*, *Greenwich Fin. Servs. Distressed Mortg. Fund 3 LLC v. Countrywide Fin. Corp.*, 603 F.3d 23, 27 n.2 & 3 (2d Cir. 2010) (discussing "three jurisdictional *exceptions* of § 1332(d)(9)") (emphasis added).[4]

Quite simply, if a class action involves the type of claim described in Paragraph (9)'s

---

[3] Plaintiffs attempt to distinguish the corporate-governance exception in § 1332(d)(9)(B) from the "local controversies" exception in § 1332(d)(4)(A). (Opp. at 15-16.) Plaintiffs contend that CAFA's corporate-governance "carve out" is merely an *exemption* because the drafters of CAFA did not refer to it as "an explicit exception," whereas the local controversy is an *exception* because the statute "plainly directs a district court to decline to exercise jurisdiction in certain circumstances." (*Id.* at 15.) This argument fails. Both statutes plainly state that the district court may not exercise jurisdiction in certain situations. *See* 28 U.S.C. § 1332(d)(9)(B) (stating CAFA jurisdiction "shall not apply" to matters involving corporate governance); 28 U.S.C. § 1332(d)(4)(A) (stating district court "shall decline to exercise jurisdiction" over controversies that are local).

[4] CAFA's legislative history further reinforces this conclusion. *See, e.g.*, S. Rep. 109-14, at 45 (2005) ("Pursuant to new subsection 1332(d)(9), the Act *excepts* from new subsection 1332(d)(2)'s grant of original jurisdiction those class actions that solely involve claims that relate to matters of corporate governance arising out of state law.") (emphasis added).

corporate-governance exception, the Court may not exercise subject-matter jurisdiction under CAFA. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (stating that federal courts "possess only th[e] power [to hear cases] authorized by Constitution and statute"). That Plaintiffs' actions fall squarely within Paragraph (9) is not in dispute. These actions are so directly related to American Greetings' internal affairs that Plaintiffs do not even suggest they fall outside the scope of the corporate-governance exception. (*See* AGC Memo. at 6-9.)

Unable to credibly characterize their cases as involving anything other than American Greetings' internal affairs, Plaintiffs challenge the exception's general applicability. This effort fails as a matter of law.

Plaintiffs first suggest that the corporate-governance exception applies only when a defendant removes a class action to federal court. This is plainly not so, as a separate statute—28 U.S.C. § 1453(d)—sets forth an identical corporate-governance exception to the removability of class actions. *See In re Textainer P'ship Sec. Litig.*, No. C-05-0969-MMC, 2005 WL 1791559, at *4 n.4 (N.D. Cal. July 27, 2005) ("'[T]he parameters' of 28 U.S.C. § 1332(d)(9) and 28 U.S.C. § 1453(d) 'are intended to be coterminous.'") (quoting S. Rep. No. 109-14, at 50 (2005)). Moreover, nothing in the text of § 1332(d)(9) remotely suggests it is limited to the removal scenario. *See* 28 U.S.C. § 1332(d)(9)(B) (stating that CAFA jurisdiction "shall not apply to *any* class action . . . that relates to the internal affairs or governance of a corporation") (emphasis added); *see also Greenwich Fin. Servs.*, 603 F.3d at 27 (applying corporate-governance exception to limit appellate jurisdiction); *Kurz v. Fidelity Mgmt. & Research Co.*, No. 07-cv-592-JPG, 2007 WL 2746612, at *4 (S.D. Ill. Sept. 18, 2007) (ordering plaintiff to show cause why the court should not dismiss claims for breach of fiduciary duty under § 1332(d)(9) where the claims were filed in federal court); *Firkins v. TitleOne Corp.*, No. 1:10-

cv-110-BLW, 2011 WL 2604725, at *1-2 (D. Idaho June 30, 2011) (denying motion for sanctions where plaintiff moved to voluntarily dismiss its breach of fiduciary duty claims after realizing the court lacked jurisdiction under § 1332(d)(9)).

Stymied by CAFA's clear language, Plaintiffs rely upon a piece of legislative history indicating that the corporate-governance exception was intended to preserve the "jurisdictional lines" drawn by the Securities Litigation Uniform Standards Act ("SLUSA").  (*See* Opp. at 14.) This reliance is misplaced for two reasons.  First, legislative history cannot change a statute's plain language.  *See, e.g.*, *E.E.O.C. v. Kaplan Higher Educ. Corp.*, 790 F. Supp. 2d 619, 624 (N.D. Ohio 2011) ("As the Court finds the plain language of the statute controlling in this case, the Court declines to address plaintiff's arguments relating to legislative history and congressional intent.").  Again, § 1332(d)(9) makes clear that CAFA "shall not apply" to actions that fall within the corporate-governance exception.

Second, the legislative history cited by Plaintiffs does not support their position.  SLUSA does not grant federal courts jurisdiction.[5]  Instead, it preempts certain securities-fraud class actions arising under state law, so that those class actions must be brought in federal court under federal securities law.  *See Beary v. Nationwide Life Ins. Co.*, No. 2:06-CV-967, 2008 WL 4222025, at *3-4 (S.D. Ohio Sep. 15, 2008).  SLUSA exempts from its pre-emptive sweep actions relating to a corporation's governance that arise under the law of the state where the

---

[5] Plaintiffs note that SLUSA says actions subject to its preemption exemption "may be maintained in a State or Federal court by a private party."  15 U.S.C. § 78bb(f)(3)(A)(i).  But SLUSA is a preemption statute, not a jurisdictional statute.  Thus, the quoted language does not authorize a plaintiff to bring an exempted action in federal court regardless of whether that action meets the requirements for federal question or diversity jurisdiction.  It simply means that SLUSA will not bar the action.  *See Atkinson v. Morgan Asset Mgmt.*, 658 F.3d 549, 552 (6th Cir. 2011) ("If the court finds that the action is precluded [by SLUSA], neither the district court nor the state court may entertain it.") (internal quotations omitted).

5

corporation is incorporated.  15 U.S.C. § 78bb(f)(3)(A)(i); *see also Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 87 (2006) (discussing the "tailored exceptions to SLUSA's pre-emptive command").  CAFA's corporate-governance exception comports with this aspect of SLUSA by carving out similar actions from its grant of federal jurisdiction, so that class actions based on state law (like this one) may still be brought exclusively in state court.

Ultimately, Plaintiffs cannot reasonably dispute that (1) CAFA does not apply to state-law actions relating to a corporation's internal affairs and (2) both of their state-law actions do just that.  (*See* AGC Memo. at 7-8.)  Their actions are thus subject to dismissal for lack of subject-matter jurisdiction.

## II.     The Court Should Abstain Under *Colorado River*.

### A.     This Case Is Parallel to the Ohio State-Court Litigation.

In arguing against abstention, Plaintiffs first point to minor differences between their cases and the state-court litigation in an attempt to show that the actions are not "parallel."  This ignores the standard for "parallel" actions established by the Sixth Circuit in *Romine v. Compuserve Corp.*, 160 F.3d 337, 339-40 (6th Cir. 1998), which American Greetings set forth and explained in its opening brief.  Two actions are "parallel" for *Colorado River* abstention purposes when they "are substantially similar." *Id.* at 340.  This means that the two cases must involve "substantially similar parties" and allege the "same material facts." *Id.*  Because this case and the consolidated state-court litigation are both based on a common nucleus of operative facts, and both aim to thwart the proposed transaction, these cases are parallel.  (*See* AGC Memo. at 10-11.)

Plaintiffs brush aside *Romine* and instead rely principally on *Hayes v. City of Columbus*, No. 2:10-CV-0513, 2011 WL 2174973 (S.D. Ohio June 3, 2011), a materially distinguishable

Southern District of Ohio case.[6]  In *Hayes*, the estate of a decedent fatally shot by police officers sued in state court for wrongful death and in federal court for constitutional violations.  *Id.* at *1.  The Southern District of Ohio found that the two actions were not parallel because they asserted ***none*** of the same theories; the federal case addressed a civil rights issue and the constitutionality of the program that allegedly caused the police to shoot Hayes, whereas the state action involved only state tort law.  *See id.* at *3 (stating that district court should not abstain where "state court fails to adequately address constitutional questions"); *see also Baskin v. Bath Twp. Bd. of Zoning Appeals*, 15 F.3d 569, 572 (6th Cir. 1994) (holding two cases were not parallel because litigants asserted completely different legal theories in challenging the same variance—the state plaintiffs wanted the variance overturned, and the federal plaintiff wanted it expanded).

In contrast, as American Greetings has already demonstrated, the state and federal cases here involve substantially similar legal claims.  (AGC Memo. at 10-11.)  Unlike *Hayes* and *Baskin*, both Plaintiffs and the state-court litigants assert basic breach-of-fiduciary-duty claims.  (*Compare* Wolfe Compl. ¶¶ 60-65 *with* Carter Compl. 56-62, Ex. B to AGC Memo.)  And both argue that the special committee is incapable of approving the proposed transaction.  (*Compare* Wolfe Compl. ¶¶ 32-53 *with* Carter Compl. ¶¶ 40-49, Ex. B to AGC Memo.)  The only difference is Plaintiffs' theory regarding American Greetings' Articles of Incorporation ("AOI"),

---

[6] Plaintiffs attempt in a footnote to distinguish *Romine* by claiming the Sixth Circuit took "clear offense" to the "manipulation" by plaintiffs' counsel.  (Opp. at 17 n.16.)  Actually, the Sixth Circuit expressly stated that the plaintiffs' "motivation [was] of no import to [its] analysis."  *Romine*, 160 F.3d at 340.  And either way, surmising about the panel's motive does not alter *Romine*'s holding or its similarity to this case.  *Romine* is directly on point and clearly held that two actions are parallel if they are substantially similar, which means the parties and claims need not be identical.  (*See* AGC Memo. at 10-11.)

which involves the same inquiry as state law.[7]  This minor difference is insufficient to defeat parallelism here.  *See, e.g.*, *Healthcare Capital, LLC v. Healthmed, Inc.*, 213 F. Supp. 2d 850, 858 (S.D. Ohio 2002) ("HCC is correct that more claims are asserted in this action than are being adjudicated in the Nevada Litigation.  All of the claims, however, arise out of a common nucleus of operative facts.").

To avoid this conclusion, Plaintiffs mischaracterize the state-court litigation.  The first complaint filed in state court, for example, does not "merely suggest that any future transaction . . . will likely be unfair."  (Opp. at 17 (citing Carter Compl. ¶¶ 40-49).)  The plaintiff in *Carter* expressly alleges, as do Plaintiffs here, that "each of these directors is conflicted and not able to consider the terms of the Buyout in the required impartial manner."  (Carter Compl. ¶ 40, Ex. B to AGC Memo.)  The *Carter* Complaint goes on to state that "none of the Non-Employee Directors has the requisite independence required to properly consider the Buyout."  (*Id.* ¶ 49; *see also* IBEW Local 98 Compl. ¶ 54, Ex. C to AGC Memo. (seeking a declaration that "a properly constituted and empowered independent committee of disinterested directors of the Board must be established and empowered in order to fairly negotiate the terms of any merger").)  Plaintiffs' actions are thus no broader than the state-court cases.

Plaintiffs also cite cases holding that "some factual overlap does not dictate that proceedings are parallel."  (Opp. at 18 (quoting *Hayes*, 2011 WL 2174973, at *4).)  But here, as demonstrated above and in American Greetings' opening brief, the factual basis is ***identical*** for both the state and federal cases.

---

[7] As explained in American Greetings' opposition to Wolfe's Motion for Summary Judgment, the question is exactly the same, since state law governs the ultimate determination of independence, and since the standard under the AOI is identical to state law in any event.  (*See* AGC Opp. to Mot. Summ. J.)

The parties also are substantially similar.  The state court cases define the class as "all holders of American Greetings stock who will be harmed by defendants' actions."  (Carter Compl. ¶ 20, Ex. B to AGC Memo.)  Plaintiffs claim that they "specifically" excluded certain Class B shareholders from their class definition (Opp. at 18), but this does not defeat parallelism because the state court actions are "actually more comprehensive."  *Romine*, 160 F.3d at 340.  (*See also* Opp. at 17 (acknowledging cases are parallel when "state case is broader than the federal case") (quoting *Hayes*, 2011 WL 2174973, at *3).)

Plaintiffs' attempt to distinguish the "theories of recovery" is likewise unavailing.  Plaintiffs in this action purportedly "seek to prevent the Special Committee from negotiating and approving a transaction," while the state-court plaintiffs supposedly "seek to challenge whatever transaction arises from the negotiations."  (Opp. at 17.)  But all of the plaintiffs have the same end goal—stopping the proposed transaction—and any slight difference in the requested relief is insufficient to defeat parallelism.  *See Iron Workers of W. Pa. Pension Plan v. Caremark RX, Inc.*, No. 3:06-1097, 2007 WL 60927, at *4 (M.D. Tenn. Jan. 05, 2007) ("The court has found no authority in this circuit or any other indicating that minute differences regarding the form of injunction requested can defeat parallelism.").

The seven consolidated state-court cases are comprehensive and challenge the proposed transaction as a whole, including the special committee's independence.  They are also based on the same facts and seek the same relief.  As such, the federal and state-court cases are parallel.

### B. Plaintiffs Misapply the Abstention Factors.

In arguing against abstention, Plaintiffs also distort the *Colorado River* factors.[8]  First,

---

[8] Plaintiffs also misconstrue American Greetings' argument regarding the declaratory judgment

*continued on next page...*

9

Plaintiffs wrongly suggest that there is no threat of piecemeal litigation (factor three), citing *Devlin v. Kalm*, No. 11-1261, 2012 WL 3241656, at *6 (6th Cir. Aug. 9, 2012). There, the plaintiff alleged in state court that his discharge "violated state civil service rules," whereas the federal action involved "federal constitutional claims that must be resolved by the federal court regardless of the outcome of Plaintiff's grievance under administrative review." *Id.* The plaintiff in *Devlin* also sought "injunctive and monetary relief for his federal case [and only] reinstatement and back pay or front pay" in the state grievance. *Id.* In other words, like in *Hayes* and *Baskin*, the federal and state cases alleged different legal theories and sought different relief.

In contrast, Plaintiffs here seek the identical goal as the state court litigation—stopping the proposed transaction. (*Compare* Carter Compl. ¶ 1, Ex. B to AGC Memo. ("This is a shareholder derivative and class action brought . . . to enjoin a self-dealing going-private plan.") *with* Wolfe Compl. ¶ 1 ("This is a shareholder class action . . . seeking injunctive, declaratory, and other equitable relief in connection with a proposal by the Company's controlling shareholders to take the Company private."); *see also* Opp. at 24-25 (characterizing their claim as a "challenge to potential acquisitions").) Unlike in *Devlin*, any ruling the Court makes here will directly impact the state court handling the consolidated litigation. *See Deutsch Fin. Servs.*

---

*…continued from previous page*

statute. In *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995), the Supreme Court held that federal courts' "obligation to exercise the jurisdiction conferred on them by Congress" does not apply when considering whether to issue declaratory relief faced with a parallel state court proceeding. *See also Adrian Energy Assoc. v. Mich. Pub. Serv. Comm'n*, 481 F.3d 414, 422 (6th Cir. 2007) (noting "courts [are] particularly reluctant to entertain federal declaratory judgment actions premised on diversity jurisdiction in the face of a previously-filed state-court action"). The burden is thus lessened for the Court to defer to the state court in the declaratory judgment context. And as explained in American Greetings' opposition to Wolfe's Motion for Summary Judgment, declining to issue declaratory relief is proper in this case. (AGC Opp. to Mot. Summ. J. 7-11.)

*Corp. v. Schwartz Homes, Inc.*, 187 F.R.D. 542, 548 (N.D. Ohio 1998) (stating that, when different courts adjudicate the identical issue and potentially render conflicting results, there is "no reason to allow the parties to litigate [the] case [in] two courts"). This threat of piecemeal litigation—in this type of case—is itself an "exceptional circumstance" contemplated by *Colorado River*. *See Turner v. Fushi Copperweld, Inc.*, No. 3:10-CV-0711, 2011 WL 1750737, at *2 (D. Nev. May 6, 2011) (holding that exceptional circumstances exist in an action to enjoin a going-private transaction due to parallel claims in state court).

      As American Greetings demonstrated in its opening brief (*see* AGC Memo. at 11-14), the remaining factors also favor abstention. Factor four asks which case was filed first. *Romine*, 160 F.3d at 340-41. That the state-court actions were filed more than a month before Plaintiffs brought their suits is beyond debate.

      Relatedly, with respect to factor seven, Plaintiffs contend that their cases are farther along than the now-consolidated state-court cases in light of Wolfe's Motion for Summary Judgment. (*See* Opp. at 20 n.17.) This pre-answer motion for partial summary judgment should not count for "substantive progress" under *Colorado River*. *Romine*, 160 F.3d at 340-41. The state court, which has held hearings, approved a leadership structure, and consolidated the cases so that a consolidated class action complaint may be filed, is actually much farther along than this case—no surprise given that the state-court plaintiffs filed their action first.

      Plaintiffs wrongly claim that the fifth factor—the source of governing law—is not relevant because there is no "novel and difficult question of state law." (Opp. at 21 (quoting *Finch v. Thomas Asphalt Paving Co.*, 252 F. Supp. 2d 459, 465 (N.D. Ohio 2002)).) *Finch* did not rely on Sixth Circuit law, however, instead quoting the Eastern District of New York. And while this factor is "less important," *Deutsche Fin. Servs.*, 187 F.R.D. at 548, it is not irrelevant.

11

This factor supports abstention here because Plaintiffs bring only state-law claims. (*See* Wolfe Compl. ¶¶ 60-79 (alleging state-law breach of fiduciary duty and breach of contract claims); LAMPERS Compl. ¶¶ 53-72 (same).)

Regarding factor six—the adequacy of the state-court action—Plaintiffs question "whether plaintiffs' counsel in the State Actions . . . can protect AGC shareholders' rights" and argues these actions are not "viable." (Opp. at 20-21.) Plaintiffs suggest that their AOI theory presents the best chance for any class recovery. (*Id.*) But Plaintiffs offer no basis for these conclusions, and tellingly, they bring the same garden-variety breach of fiduciary duty claims as the state-court plaintiffs. (*Compare* Carter Compl. ¶¶ 56-62, Ex. B to AGC Memo. *with* Wolfe Compl. ¶¶ 60-65.) Nor is Plaintiffs' AOI theory any more "viable" than the state-court actions. (*See* AGC Opp. to Mot. Summ. J.)

Rather than countenance Plaintiffs' attempt to disrupt the state court's comprehensive adjudication of this matter, the Court should abstain due to considerations of wise judicial economy.

## III. Plaintiffs' Claims Are Derivative and Thus Subject to Rule 23.1.

Plaintiffs attempt to rebut American Greetings' demonstration that their declaratory judgment claims must be pleaded with the particularity required by Rule 23.1 by insisting that their claims are direct. (Opp. at 24.) Plaintiffs ignore the main reason their declaratory judgment claims may not proceed directly: The supposed injury for which they seek redress, and the claims they attempt to assert to do so, are common to all American Greetings shareholders.

Plaintiffs contend that "no question exists that the Plaintiffs and the Class, not the corporation, are suffering the injuries, and therefore, Plaintiffs properly asserted direct claims." (Opp. at 26.) But this misses the point: "A plaintiff-shareholder does not have an independent

12

cause of action where there is no showing that he has been injured in any capacity *other than in common with all other shareholders* as a consequence of the wrongful actions of a third party directed towards the corporation." *Adair v. Wozniak*, 23 Ohio St. 3d 174, 175, 492 N.E.2d 426, 427 (1986) (syllabus) (emphasis added).  Plaintiffs' declaratory judgment claims arise solely because of their status as American Greetings' shareholders, and any purported injury would accrue commonly to all shareholders.  (AGC Memo. at 16.)  *See also Matheny v. Ohio Bancorp*, No. 94-T-5022, 1994 WL 738734, at *2 (Ohio Ct. App. Dec. 30, 1994) ("[C]ourts in this state have consistently applied *Adair* for the proposition that only a corporation can complain of an injury sustained by its shareholders as a whole.").

Plaintiffs address this argument only in a footnote, calling these cases "inapposite" because "the Weiss Family Defendants are not harmed by the Proposed Transaction."  (Opp. at 27 n.20.)  This is irrelevant to the direct/derivative analysis.  The purported wrongdoers' ownership of stock does not transform a derivative claim into a direct one.  For example, the plaintiffs in *Weston v. Weston Paper & Mfg. Co.*, 74 Ohio St. 3d 377, 378, 658 N.E.2d 1058, 1059-60 (1996), alleged that three directors kept a company's stock price "artificially low to reap unfair benefits through the stock option plan."  The defendant directors both owned stock and were not harmed by their actions.  The Ohio Supreme Court still rejected the plaintiffs' contention that their claim was direct:  "If any injuries occurred, they occurred to all the other shareholders alike.  That is precisely the situation in which derivative actions are required." *Id.* at 379; 658 N.E.2d at 1060.

Plaintiffs seek to salvage their argument by seizing on language from *Emerson v. Bank One, Akron, N.A.*, No. 20555, 2001 WL 1421531, at *1 (Ohio Ct. App. Nov. 14, 2001), which describes direct actions as including acts "*in violation of duties arising from contract or*

13

*otherwise*."  (Opp. at 26 (emphasis in original) (quotations omitted).)  Plaintiffs insist that their declaratory judgment claims are direct because they flow from the AOI, which is construed as a contract.  (*Id.*)  But the question is not simply whether contract law governs the claim.  As the *Emerson* court went on to explain, the duty "arising from contract or otherwise" must originate "from circumstances independent of the shareholder's status as a shareholder."  2001 WL 1421531, at *1.  Here, the purported "duty" on which Plaintiffs' declaratory judgment claims are based arises solely because of their shareholder status.  (AGC Memo. at 16.)  Thus, *Emerson* is far too slender a reed to support the weight Plaintiffs ask it to bear.

Likewise, Plaintiffs cannot rely on Delaware opinions finding that alleged charter violations were direct claims because Ohio applies a different test for direct shareholder actions.[9] (Opp. at 27 (citing *Ruffalo v. Transtech Serv. Partners Inc.*, No. 5039-VCP, 2010 WL 3307487 (Del. Ch. Aug. 23, 2010); *Schultz v. Ginsburg*, 965 A.2d 661 (Del. 2009).)  Delaware and Ohio have parted ways since the Delaware Supreme Court decided *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031 (Del. 2004).  (*See* AGC Memo. at 16 n.17.)  Although Delaware applies the *Tooley* test, Ohio still requires an injury "separate and distinct" from that suffered by the corporation.  *See Gensemer v. Hallock*, 125 Ohio App. 3d 84, 91, 707 N.E.2d 1156, 1160

---

[9] Nor can Plaintiffs avail themselves of cases interpreting Ohio's appraisal statute.  (Opp. at 24-25 (citing *Armstrong v. Marathon Oil Co.*, 32 Ohio St. 3d 397, 513 N.E.2d 776 (1987); *State ex rel. The Ohio Co. v. Maschari*, 51 Ohio St. 3d 18, 553 N.E.2d 1356 (1990); *Stepak v. Schey*, 51 Ohio St. 3d 8, 553 N.E.2d 1072 (1990)).)  Ohio's appraisal statute provides the exclusive remedy for determining the value of a dissenting stockholder's shares; it is irrelevant to the issues at hand, since no merger or dissent has occurred.  Moreover, none of these cases even mention the direct/derivative distinction or Rule 23.1.  *See, e.g.*, *Maschari*, 51 Ohio St. 3d at 20-21; 553 N.E.2d at 1359 (addressing whether the appraisal statute barred the trial court's jurisdiction, not whether the plaintiffs pled direct claims).  They support only the unremarkable proposition that "an action for breach of fiduciary duty may be brought outside the appraisal statute."  *Stepak*, 51 Ohio St. 3d at 10; 553 N.E.2d at 1074.

(1997). Thus, *Adair* and *Weston*, not *Tooley* and its progeny, control this case.[10]

Plaintiffs contend that "courts applying Ohio law routinely allow plaintiffs to pursue direct claims for breaches of fiduciary duty." (Opp. at 25.) But the cases Plaintiffs cite on this issue all deal with close corporations, for which a special exception applies. *See Benincasa v. Flight Sys. Auto. Grp., LLC*, 242 F. Supp. 2d 529, 536 (N.D. Ohio 2002); *Terry v. Carney*, No. OT-94-054, 1995 WL 763971, at *7 (Ohio Ct. App. Dec. 29, 1995) (explaining an exception to the rule regarding direct and derivative pleading "involving claims by shareholders in a close corporation"). Plaintiffs do not and cannot allege that American Greetings is a close corporation.

In short, Plaintiffs' sought-after declaration that the proposed transaction may not proceed—whether under Ohio law or the AOI—affects all shareholders equally and arises solely by virtue of Plaintiffs' shareholder status. *See, e.g.*, *Kadel v. Dayton Superior Corp.*, 105 Ohio Misc. 2d 11, 17, 731 N.E.2d 1244, 1248 (Ohio C.P. 2000) (suit to enjoin proposed merger derivative). The Court should thus dismiss Plaintiffs' claims because they are derivative, and Plaintiffs have alleged neither demand refusal nor demand futility. (*See also* AGC Memo. at 17 (discussing Fed. R. Civ. P. 23.1).)

## CONCLUSION

For the reasons set forth above and in American Greetings' opening brief, the Court should dismiss Plaintiffs' actions.

---

[10] *Schultz* and *Ruffalo* are distinguishable in any event. *Schultz* held that injuries affecting shareholder voting rights—which are not alleged here—are direct claims. 965 A.2d at 664-65. *Ruffalo* involved contract rights that ran only to certain shareholders. 2010 WL 3307487, at *9.

Dated:   February 11, 2013                              Respectfully submitted,


                                    /s/Michael J. Montgomery
John D. Parker (0025770)
Michael J. Montgomery (0070922)
Karen E. Swanson Haan (0082518)
Baker & Hostetler LLP
3200 National City Center
1900 East Ninth Street
Cleveland, Ohio  44114-3485
Telephone: 216.621.0200
Facsimile: 216.696.0740
jparker@bakerlaw.com
mmontgomery@bakerlaw.com
kswansonhaan@bakerlaw.com

Leah J. Domitrovic (PHV)
Baker & Hostetler LLP
191 North Wacker Drive, Suite 3100
Chicago, Illinois  60606-1901
Telephone: 312.416.6200
Facsimile: 312.416.6201
ldomitrovic@bakerlaw.com

*Attorneys for American Greetings Corporation*

## CERTIFICATE OF SERVICE

  I hereby certify that on February 11, 2013, a copy of the foregoing was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

                /s/Michael J. Montgomery
                Michael J. Montgomery (0070922)

                *Attorney for American Greetings Corporation*